**LITTLE ROCK SCHOOL DISTRICT,**

v.

**PULASKI COUNTY SPECIAL SCHOOL DISTRICT, et al.**

No. LR–C–82–866.

United States District Court,
E.D. Arkansas, W.D.

July 2, 1987.

See also, 663 F.Supp. 1557.

P.A. Hollingsworth, Philip E. Kaplan, Janet L. Pulliam, John M. Bilheimer, Little Rock, Ark., for plaintiff.

Wright, Lindsey & Jennings, C.R. McNair, III, Asst. Atty. Gen., Little Rock, Ark., Neal, Gerber & Eisenberg, Chicago, Ill., Sharon Streett, Dept. of Educ., Jack, Lyon & Jones, Stephen L. Curry, Little Rock, Ark., for defendants.

Theodore Shaw, New York City, John W. Walker, Little Rock, Ark., for intervenors Joshua, et al.

Richard Roachell, Cearley, Mitchell & Roachell, Little Rock, Ark., for intervenors Knight, et al.

Robert D. Cabe, Cabe & Lester, Little Rock, Ark., for intervenors McKinney, et al.

HENRY WOODS, District Judge.

## ORDER

After hearing from a number of witnesses, including magnet school principals and curricula specialists, and upon reviewing the Magnet Review Committee (MRC) reports, I remain steadfastly optimistic that six quality interdistrict magnet schools can and will be ready by fall. This will, of course, require the full cooperation of everyone involved.

The principals are most impressive and will provide excellent leadership, in spite of the manner in which they were selected. Proper procedures have now been instituted for staff selection.

The attorneys have reached a compromise on the budget for the 1987–88 school year of $3100 per magnet student. This figure is hereby approved.

All parties agree that the role of the MRC must be clarified so that the interdistrict magnet schools can be efficiently and successfully implemented and operated. Divergent opinions in a committee such as the MRC are not only inevitable but are helpful in thoroughly examining options. The current problem with the MRC is not that members differ in perspectives and opinions, but that any vote which is less than unanimous is viewed by the parties as a stalemate to be resolved by the attorneys. At first blush it is tempting to allow the parties to compromise and reach agreement however they choose, whether through their attorneys or through the MRC. That is not a realistic long-term solution and it runs counter to the clear intent of the Eighth Circuit Court of Appeals in ordering the MRC to "administer" the magnets. Generally educational decisions should be made by educators, not by lawyers. For the most part, the MRC is composed of members with excellent credentials and abilities in the field of education.

The recent opinion in the St. Louis desegregation case sheds light on what the Court of Appeals intended the role of the MRC in our community to be. *Liddell, et al v. Board of Education, et al.*, 822 F.2d 1446 (8th Cir.1987). (*"Liddell X"*). Initially it is clear that the MRC is a decision-making, rather than merely an advisory, body. Both the MRC in Little Rock/North Little Rock and Metropolitan Coordinating Committee (MCC) in St. Louis were charged with the task of administering specialty schools. In St. Louis, the MCC was formed and given authority to administer the interdistrict vocational schools just as the MRC was formed in this case to administer the magnet schools. In the St. Louis case, by agreement, the day-to-day operation of the

schools rested not with the MCC but with boards of education of the host districts. The responsibilities reserved to the boards included "the operation of the respective programs, *employment of staff,* development of personnel and appropriation of funds to meet each district's needs." Subsequent to the agreement, the district court ordered two vocational schools closed and further ordered the MCC to develop a staffing plan to accommodate the reduced and reassigned staff members in those closing schools. The City Board of Education argued on appeal that empowering the MCC to develop a restaffing plan infringed on the powers reserved to the boards of education. The court of appeals held:

> We find little merit in this contention. It is clear that the MCC must be given additional authority and must be permitted to act with more independence and objectivity than it has in the past if the ... schools ... are to be integrated. Even with its power enhanced, the MCC must have the close cooperation of the school districts if [the] plan is to succeed.

*Liddell X* at 1458.

Similarly the parties to this case have agreed that the host district of a magnet school should make the day-to-day decisions regarding the operation of the school. This agreement cannot and will not be construed to relegate the MRC to the status of an unused appendage. The court in unequivocal language directed the MCC in St. Louis to make independent investigations, evaluations and decisions:

> There is no evidence that [the MCC] thoroughly reviewed the matter, or made an independent decision with respect to it. As the district court indicated, this practice cannot be permitted to continue. The MCC must be permitted to exercise the responsibility given to it by the district court and this Court.

*Liddell X* at 1456.

Accordingly, the role of the MRC is to make recommended policy decisions regarding the operation of the magnet schools. Those decisions should then be communicated, in a written report, to the court for approval. The report should reflect the process used to reach decisions and should reflect independent fact-finding. Objections to MRC reports should be filed with the court within 20 days, after which the court will approve, modify or reject the MRC's recommendations.

The court has neither the time nor the inclination to provide a laundry list of "policy" decisions as distinguished from "day-to-day" decisions. By way of example, in selecting staff, the MRC should set the criteria to be used or process by which teachers are selected for magnet schools; the host district would implement that policy by appropriately selecting the teachers.

With respect to seat allocation, the MRC should establish a policy for seat allocation within the bounds of the stipulation which will maximize participation in the magnet schools from all three districts. Each district should set its criteria for selection of its students for magnet schools to enhance its desegregation efforts. For the 1987–88 school year, the parties have agreed, and it is hereby approved, that all North Little Rock School District (NLRSD) and Pulaski County Special School District (PCSSD) students who applied for magnet schools as of May 22, 1987 may attend the magnet schools they have chosen.

As agreed by the parties, the number of seats allocated to NLRSD and PCSSD are to be broken down on an organizational level (*e.g.,* elementary, junior high school, senior high school). On July 15, 1987, fifty percent of any unfilled magnet seats allocated to NLRSD and PCSSD will be released and made available to the Little Rock School District (LRSD) students. On August 3, 1987, 80% of any NLRSD and PCSSD unfilled seats will be released, and on August 24, 1987, 100% of the NLRSD and PCSSD unfilled seats will be released and made available to LRSD. It appears that NLRSD and PCSSD have already recruited substantial numbers of students.

The MRC must play an integral role in the budgeting process. For the 1987–88 school year the stipulated figure of $3100 per student will apply. In the future, the MRC should work with the host district in

arriving at a recommended budget. That budget should then be submitted for court approval. In the event agreement cannot be reached, the MRC should submit its recommended budget to the court, as with other MRC reports, according to the procedure outlined above. Objections or recommended modifications may then be timely filed by any party.

Successful magnet schools can be an effective desegregation tool while enhancing educational opportunities for all children. While clarification of the role of the MRC and the process to be followed should prove to be helpful, nothing can substitute for the good faith cooperation of each party.

See also 663 F.Supp. 1554.